**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRANDON MONTGOMERY, as personal representative of the estate of Gary Montgomery,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**THE DISTRICT OF COLUMBIA, ET AL.**<br><br>    **Defendants.** | **CA: 18-cv-1928 (JDB)** |

## MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

Defendants MPD Officers Brian Wise, Hosam Nasr, in their individual and official capacities, and the District of Columbia (the "District") (collectively, Defendants) move the Court for an order dismissing Counts  4, 5, 7, 8, and 9 of the complaint for failure to state a claim upon which relief can be granted   *See* Fed. R. Civ. P. 12(b) (6).

In support of this motion Defendants rely upon the attached memorandum of points and authorities.  A proposed order is also attached.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO[1008971]
Chief, Civil Litigation Division, Section IV

*/s/ Aaron J. Finkhousen*
AARON J. FINKHOUSEN [1010044]
Assistant Attorney General
Suite 630 South

441 Fourth Street, NW
Washington, DC 20001
(202) 724-7334
(202) 730-0493 (fax)
aaron.finkhousen@dc.gov

/s/ Robert A. DeBerardinis, Jr.
ROBERT A. DEBERARDINIS, JR. [#335976]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 724-6642; (202) 741-8895 (fax)
robert.deberardinis@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRANDON MONTGOMERY, as personal representative of the estate of Gary Montgomery,** | |
| **Plaintiff,** | |
| **v.** | **CA: 18-cv-1928 (JDB)** |
| **THE DISTRICT OF COLUMBIA, ET AL.** | |
| **Defendants.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Defendants MPD Officers Brian Wise, Hosam Nasr, and the District of Columbia (the "District") (collectively, Defendants), through counsel, submit the following memorandum of points and authorities in support of their motion for an order dismissing Counts 4, 5, 7, 8, and 9 of the Complaint for failure to state a claim upon which relief can be granted

<u>**INTRODUCTION**</u>

Plaintiff brings this civil action on behalf of Gary Montgomery ("Montgomery"), who was accused – by eyewitnesses and based on video surveillance footage – of stabbing a transgender woman in the head with a knife and killing her. He was arrested and prosecuted for the murder, but, ultimately, found not guilty on August 16, 2017. Plaintiff claims that Montgomery's arrest and prosecution was based not upon the video surveillance footage or eye witness testimony but arose from a civil conspiracy between Defendants and the prosecutor based upon their desire to discriminate against Montgomery because of his disabilities. Plaintiff brings various claims related to his arrest and subsequent prosecution. Herein, the District moves the Court for an order dismissing Counts 4, 7, 8, and 9 of the Complaint.

Counts 4 and 5 of the Complaint allege that the defendant police officers violated Montgomery's rights by failing to provide exculpatory evidence to prosecutors, which resulted in Montgomery being held for five and half years while awaiting trial, Compl. ¶ 149-152, and by causing a criminal prosecution to advance by disregarding evidence favorable to Montgomery, suppressing exculpatory evidence, by fabricating and coercing a false confession, and disregarding evidence pointing to a different suspect, Compl. ¶¶ 153-157.

Count 7 brings a Monell claim against the District for all of the alleged wrongs raised in the Complaint.

Counts 8 and 9 bring claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act alleging that the District of Columbia discriminated against Montgomery by interrogating him on February 4, 2012 and February 10, 2012.   Compl. ¶¶ 19-23.

First, the Court should dismiss Counts 4 and 5 because there is no right to presentation of exculpatory evidence before the grand jury or before a judge on a pretrial detainment hearing. Consequently, the Complaint does not state a claim that Montgomery's alleged injury – being held for five and half years – was caused by any violation of law.

Second, the Complaint fails to allege sufficient facts to plausibly entitle him to relief as to his constitutional claim against the District of Columbia.

Finally, the Court should dismiss Counts 8 and 9 because they fail to state a claim upon which relief can be granted.  Both claims allege that the District discriminated against Montgomery because of his disability by interrogating him.  The Complaint falls short of stating sufficient facts to support this claim because it implies that the officers treated Montgomery no differently than any other arrestee.  Instead, the Complaint alleges that the District failed to

accommodate Plaintiff's disability – that is, they failed to treat Plaintiff differently.  Even if the Court reads Counts 8 and 9 to allege a failure to accommodate claim, the Complaint still fails because it does not allege that Montgomery was unable to benefit from the public program of police interrogations by reason of his disability.

## **BACKGROUND**.

On February 2, 2012, Ms. Deoni JaParker Jones was fatally stabbed once in the head, while sitting at a bus stop at the intersection of East Capitol and Sycamore Street, N.E.  The crime was investigated by Metropolitan Police Department homicide detectives Brian Wise and Hosam Nasr. Compl. ¶ ¶ 33, 34.  According to the complaint, early on in their investigation the detectives along with prosecutors from the Office of the United States Attorney entered into a conspiracy to falsely charge and convict Gary Montgomery, who suffered from schizophrenia, with the crime with the crime.  Over five years later, Mr. Montgomery was found not guilty of the crime. Compl. ¶ 1.

Although unstated in the complaint, Mr. Montgomery was charged with second degree murder on February 11, 2012.  *See* Superior Court Docket (Exhibit 1).  On March 21, 2018, he was preventively detained pursuant to D.C. Code § 23-1325(a).  *See* Superior Court Docket (Exhibit 1).  As can be gleaned from the docket, for the next five years there was a dispute as to whether Mr. Montgomery was competent to stand trial and he remained confined at St. Elizabeth's Hospital.  *See* Superior Court Docket, *passim*.  The complaint alleges that the defendant police officers violated the constitutional rights of Mr. Montgomery by presenting false testimony at the preventive detention hearing and by failing to disclose exculpatory evidence at that hearing.  Compl. ¶ 4.  Specifically, the complaint alleges that the detectives knowingly took advantage of his mental illness to extract a false confession from him.  Compl. ¶

¶ 109-126. The preventive detention hearing in turn resulted in Mr. Montgomery's detention during the next five years at St. Elizabeth's Hospital, while the issue of his competence to stand trial played out. *See* Superior Court Docket (Exhibit 1) (passim); Compl. ¶ 25.   The complaint alleges that during that five-year period (1) Defendants Nasr and Wise presented false testimony during the preliminary hearing, including evidence of a false confession; (2) concealed exculpatory evidence (3) persisted in a false prosecution although DNA found on clothing dropped by the actual killer produced a full DNA profile that did not match either Mr. Montgomery's DNA or Ms. Jones' DNA, showing Mr. Montgomery was not the actual killer Compl. ¶

### STANDARD OF REVIEW

Under Rule 12(b)(6), to survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). The Supreme Court has set forth a "two-pronged approach" that a trial court should apply when ruling on such a motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a trial court generally must consider a plaintiff's factual allegations as true, the court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth [because] [w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual

allegations," only then should it "assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.*  The Court defined "plausible" as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.; see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting

passage with approval).  In other words, a plaintiff's factual allegations must allow a court to

draw a reasonable inference that the defendant is liable for the misconduct alleged, if the factual

allegations are proven true.  *See Matrixx Industries, Inc. v. Siracusano*, 563 U.S. 27, 46-47

(2011).

## ARGUMENT

### I.      The Court Should Dismiss Counts 4 and 5.

The Court should dismiss Counts 4 and 5 because there is no right to presentation of

exculpatory evidence before the grand jury or before a judge on a pretrial detainment hearing.

Under *Brady* v. Maryland, 373 U.S. 83 (1963) a prosecutor is obliged to provide

exculpatory evidence at such a time as to allow the defense to use the favorable material

effectively in the preparation and presentation of its case.  *Miller v. United States*, 14 A.3d 1094,

1107 (D.C. 2011) (internal quotation marks and citations omitted).  While disclosure should

happen early, it is "not feasible or desirable to specify the extent or timing of disclosure *Brady*

and its progeny require," but "exculpatory evidence must be disclosed in time for the defense to

be able to use it effectively not only in the presentation of its case, but also in its trial

preparation."  *Id.* at 1111 (internal citations and quotation marks omitted).  Importantly, there are

three components of a *Brady* violation: (1) the evidence must be favorable to the accused; (2) the

evidence must have been suppressed by the state; and (3) prejudice must have ensued.  *Id.* at 1109.  To demonstrate the third element, prejudice, a party must show "that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense."  *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

Based on the facts alleged in the Complaint, Plaintiff cannot establish that the prosecution's failure to provide exculpatory evidence earlier would have resulted in a different verdict.  The Complaint alleges that Montgomery was acquitted.  Compl. ¶ 1.  Consequently, failure to provide the exculpatory evidence earlier cannot form the basis of a constitutional violation under *Brady*.

Even the argument that earlier disclosure of exculpatory evidence might have prevented pretrial detention cannot defeat dismissal.  First, because there is no right to receive exculpatory evidence other than under *Brady* and because no *Brady* violation occurred here, this claim fails to state a claim upon which relief can be granted.  Second, even if the Court disagrees, the Complaint still falls short because no such right was clearly established at the relevant time, and thus the individual District defendants are protected by qualified immunity.

In Section 1983 cases, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Following the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001), courts were required to conduct a two-step inquiry to determine whether an official was qualifiedly immune from suit.  *Pearson*, 555 U.S. at 232.  First, they had to "decide whether the facts that a plaintiff ha[d] alleged or shown ma[d]e out a violation of a constitutional right."  *Id.*

6

If they did, courts then had to determine "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (citations omitted).  If it was not, the official could not be held liable.  Later, in *Pearson*, the Court ruled that the *Saucier* inquiry should not be regarded as mandatory, meaning that courts may decline to answer the first question and move directly to the second when the alleged conduct did not violate rights that were clearly established. *Id.* at 236.

Guiding principles provide that a prosecutor has no duty to present exculpatory evidence to a grand jury. *United States v. Williams*, 504 U.S. 36, 51 (1992) ("Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system.").  The district court in *Kenley v. District of Columbia* found that even if a duty to disclose exculpatory evidence existed, it was not clearly established in June 2013.  83 F. Supp. 3d 20, 38-40 (D.D.C. 2015).  In reaching its conclusion, *Kenley* provides the following survey of circuit precedent regarding the issue:

> *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir.2012) ("Our sister circuits disagree over whether pretrial detainees ... have a right to disclosure of exculpatory evidence."); *see Taylor v. Waters*, 81 F.3d 429, 435–36 (4th Cir.1996) (plaintiff's claim that investigator "failed to disclose exculpatory evidence" to prosecution in case in which charges were dismissed "d[id] not allege a deprivation of any right guaranteed under the Due Process Clause of the Fourteenth Amendment" because pre-trial deprivations are to be analyzed under the Fourth Amendment); *Flores v. Satz*, 137 F.3d 1275, 1278–79 (11th Cir.1998) ("Plaintiff ... was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); see also Michael Avery, Paying for Silence: The Liability of Police Officers Under Section 1983 for Suppressing Exculpatory Evidence, 13 Temp. Pol. & Civ. Rts. L.Rev. 1, 2 (2003) ("[T]he lower federal courts are in agreement that when a police officer fails to disclose exculpatory evidence to the prosecutor and a criminal defendant is convicted at a trial as a result, the convicted defendant may make a claim for damages against the officer under § 1983. When the case terminates prior to the conclusion of a trial,

7

> however, the courts disagree about whether the defendant has a
> cause of action for a violation of his or her constitutional rights.")
> (emphasis added).

*Kenley*, 83 F. Supp. 3d at 39.  The Court need look no further to reach the same conclusion –

even if some right to exculpatory evidence prior to the pretrial detainment process exists, it was

not clearly established at any time relevant to this case.

Moreover, there is no precedent in the District of Columbia (keeping in mind that pretrial

detention is regulatory rather than penal) that establishes a right to *Brady* material in advance of

a pretrial detention.  The closest the District of Columbia Court of Appeals has come is, in a

concurring opinion, to suggest that a defendant should have the right to present exculpatory

evidence at a pretrial detention hearing – but that case says nothing of any right to *receive*

exculpatory evidence.  *See Tyler v. United States*, 705 A.2d 270, 278-279 (D.C. 1997) (Schwelb,

Assoc. J., concurring) ("I write separately, however, to emphasize a point not addressed in Judge

Ruiz's opinion, namely, that Tyler's right to present exculpatory evidence at his preventive

detention hearing exists independently of the question of dangerousness and is not restricted in

any way to that issue") (footnote omitted).

Therefore, the Court should dismiss Counts 4 and 5.

**II.      The Complaint fails to Establish Plausible Entitlement to Relief as to the
Constitutional Claim Against the District.**

In Count VII of his complaint Plaintiff makes the conclusory allegation that the District's

"unconstitutional municipal customs, practices and policies" resulted in violations of Gary

Montgomery's constitutional rights.  Compl. ¶ 170.  Plaintiff alleges that District policymakers,

"failed to ensure through custom, policy and/or practice that detectives, and officers of MPD"

would not violate a myriad of constitutional rights possessed by criminal suspects and

defendants. Compl. ¶ 166.  Further, in Count VII Plaintiff alleges, again in conclusory manner,

that policymakers, "failed to adequately supervise, train or discipline their employees, though it was foreseeable that constitutional violations and harm of the type in Mr. Montgomery's case would be the likely result of such failures." Compl. ¶ 168. These conclusory allegations are insufficient to demonstrate plausible entitlement to relief as to a constitutional claim against the District and accordingly the claim be dismissed.

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). In limited circumstances, the District of Columbia can constitute a "person" for purposes of § 1983. *See Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978); *Best v. District of Columbia,* 743 F.Supp. 44, 46 (D.D.C.1990). "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell,* 436 U.S. at 694-95). Thus, "*respondeat superior* or vicarious liability will not attach under Section 1983." *Id.* As a result, a municipality cannot be sued under Section 1983 simply because one of its employees or agents violated a plaintiff's rights. *Id.* More is required.

In general, a viable claim for municipal liability exists only when a plaintiff alleges that a municipal policy was the "moving force" behind the constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003). This is accomplished by pleading facts establishing that the constitutional violation resulted from (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the

government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Id.*

Here, Plaintiff's allegations fall far short of this standard. He does not allege facts establishing an explicit setting of a policy by the government that violates the Constitution. Further, Plaintiff does not allege an act of unconstitutional conduct on the part of a policy maker of the District of Columbia. Plaintiff does attempt to plead that the District failed to respond to a need for training   His efforts, however, are insufficient to survive a motion to dismiss. Plaintiff's conclusory allegations that the District failed to adequately supervise, train or discipline their employees, though it was foreseeable that constitutional violations would arise, without more, are insufficient to demonstrate plausible entitlement to relief as to a Fourth Amendment claim against the District.

 Plaintiff here was required to plead factual allegations in the complaint that if true would demonstrate that policymakers of the District  "knew or should have known of the risk of constitutional violations, but did not act." *Jones v. Horne,* 634 F.3d 588, 601 (D.C. Cir. 2011). Thus, a pervasive pattern of similar constitutional violations by untrained municipal agents is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) ); *Cherry v. District of Columbia*, -F.Supp.3d-), 2018 WL 4283566 (D.D.C. 2018). This standard is a stringent one: "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

Plaintiff alleges in his complaint that in 2012 the District was on notice of a pattern of constitutional violations on the part of police officers based upon the factual allegation that in

1994 a man was incarcerated wrongfully for 10 months because of unconstitutional conduct on the part of police.  Compl. ¶ 167.  Claiming that in 1994 a man's constitutional rights were violated by police, is insufficient to establish plausible entitlement to relief as to Plaintiff's constitutional claim of deliberate indifference on the part of the District.  *See Moore v. District of Columbia,* 79 F.Supp.3d 121, 140 (D.D.C. 2015) (five-year old data as to unconstitutional incidents too remote in time to establish deliberate indifference); *Egudu v. District of Columbia,* 72 F.Supp.3d 34, 44 (D.D.C. 2014) (same).

In short, as to his claim of deliberate indifference on the part of the District, Plaintiff has presented nothing more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Twombly*, 550 U.S. at 555).  Consequently, the District is entitled to dismissal of the Fourth Amendment claim.  *See Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (District of Columbia cannot be liable for constitutional violations where plaintiff fails to demonstrate that a municipal policy was the "moving force" behind the constitutional violation).

III.   **The Court Should Dismiss Counts 8 And 9 Because The Complaint Does Not State A Claim Upon Which Relief Can Be Granted Based On Any Unlawful Discrimination**.

The Court should dismiss Counts 8 and 9 because the Complaint does not allege discrimination and does not allege that the District's failure to accommodate Montgomery resulted in him being denied the benefit of a public program.

The standards for § 504 of the Rehabilitation Act (Count 9) and for Title II of the ADA (Count 8), as applied to the District of Columbia, are the same.  Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 provides,

"No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).

To plead a claim of discrimination under Title II of the ADA or under § 504 of the Rehabilitation Act as follows: a plaintiff must allege (1) that he is a "qualified individual with a disability"; (2) who "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) that "such exclusion, denial of benefits, or discrimination was by reason of his disability." *Lee v. Corrections Corporation of America/Correctional Treatment Facility*, 61 F. Supp. 3d 139, 143 (D.D.C. 2014) (citing *Alston v. Dist. of Columbia*, 561 F. Supp. 2d 29, 37 (D.D.C. 2008)).

As an initial matter, because police interrogation of a suspect does not provide any benefit to Montgomery, neither Title II nor § 504  applies to the police interrogation here.  The most recent case to address the issue is *Haberle v. Troxell*, 885 F.3d 170, 180 (3rd Cir. 2018). *Haberle* notes that the law is unsettled regarding whether the ADA applies in the context of effecting an arrest and notes that the Supreme Court has left the issue open.  *Haberle*, 885 F.3d at 180 n.10.  *Haberle* itself declines making the determination as to whether the ADA applies generally in the context of arrests.  *Id.* at 180.  Still, however, *Haberle* errs in that it overlooks a key word in the statute – that the ADA protects the rights of disabled persons to public *benefits* or to *participation* in a public program.  42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity").  Here, the public program – the interrogation of Montgomery – was not a benefit; by contrast, the complaint alleges that the interrogation was designed to gather information to support the prosecution of Montgomery.  Compl. ¶ 119.  Moreover, the Complaint alleges that the program was successful.  *Id.*  Thus, the Complaint does not allege that Montgomery did not benefit from the program or was unable to participate in the program – it calls for a change to the program.  Compl. ¶¶ 126-127.  The Complaint alleges that the officers should have done more during the course of the interrogation to make it more difficult for Montgomery to incriminate himself.  *Id.*; Compl. ¶¶ 109-112.  But, changing a police interrogation – the goal of which is to incriminate the suspect – to a program designed not to incriminate a suspect is a fundamental change.  And, a fundamental change to a program is an unreasonable accommodation.  *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008) ("where the plaintiffs seek to expand the substantive scope of a program or benefit, they likely seek a fundamental alteration to the existing program or benefit and have not been denied meaningful access."); *see also* 28 C.F.R. § 35.130(b)(7) (stating that a fundamental change to a program is not a reasonable modification and need not be made by the public agency).  Consequently, the ADA and § 504 are inapposite to the claims made in the Complaint.

The alternative argument that Plaintiff may make – that even though there is no benefit at issue, Montgomery was still discriminated against in violation of the ADA or § 504 – is the avenue adopted by the court in *Haberle*, and this argument fails for the same reason the Third Circuit articulated in *Haberle*.  *Haberle* held that "[e]ven though the ADA generally applies in the arrest context, Haberle's claim for money damages against the Borough fails as a matter of law because she has not adequately pled that the Borough acted with deliberate indifference to

the risk of an ADA violation." *Haberle*, 885 F.3d at 181.  Compensatory damages are not available under the ADA absent proof of intentional discrimination, meaning "(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge." *Haberle*, 885 at 181 (internal quotation marks and citation omitted) (ellipsis in original).

Just as in *Haberle*, the Complaint here fails to allege facts to support an inference that the District had knowledge that the detectives here were substantially likely to violate a protected right and failed to act despite that knowledge.  Instead, the allegations in the Complaint are limited to the specific acts of the detectives.  Compl. ¶¶ 109-127; 171-199.  Consequently, the Complaint fails to state a claim upon which relief can be granted against the District for violation of Title II of the ADA or § 504 of the Rehabilitation Act.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint in part.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO [#1008971]
Chief, Civil Litigation Division, Section IV

*/s/ Aaron J. Finkhousen*
AARON J. FINKHOUSEN [1010044]
Assistant Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, DC 20001

14

(202) 724-7334
(202) 730-0493 (fax)
aaron.finkhousen@dc.gov

/s/ Robert A. DeBerardinis, Jr.
ROBERT A. DEBERARDINIS, JR. [#335976]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 724-6642; (202) 741-8895 (fax)
robert.deberardinis@dc.gov

15