IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON MONTGOMERY )<br><br>Plaintiff, )<br><br>vs. )<br><br>THE DISTRICT OF COLUMBIA, et al. )<br><br>Defendants. ) | CIVIL ACTION NO.: 18-cv-1928 (JDB) |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

INTRODUCTION

For almost forty years, a reasonable District of Columbia police officer would have known that it is unconstitutional to interrogate and extract a statement from a mentally ill suspect because "our system of law enforcement should not operate so as to take advantage of a person in this fashion." *U.S. v. Jackson*, 404 A.2d 911, 924 (D.C. 1979) *quoting Blackburn v. Alabama*, 361 U.S. 199, 207, (1960).[1]  Likewise, a reasonable District of Columbia police officer would know that it violates the law and grievously trespasses the Constitution to suppress evidence and to fabricate evidence against a citizen.  The Defendants initiated first degree murder charges against Gary Montgomery, a mentally ill homeless man who was experiencing an active episode of psychosis during his interrogation, and **deliberately** suppressed exculpatory evidence for half a decade showing that another person committed the murder.  Mr. Montgomery was an easy target because he was mentally ill and homeless. However, he was innocent and the Defendants had evidence pointing to the actual killer.

---

[1] Federal courts have long recognized that the decisions of the highest court of a jurisdiction constitute clearly established law. *See Jenkins v Talladega City Bd. Of Ed.*, 115 F.3d 821, 826, n. 4 (11th Cir. 1997) (explaining "in this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose")

This case turns on a knowing violation of Mr. Montgomery's constitutional rights. The United States Supreme Court has long recognized that the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, (1986).  This case falls into latter category of police officers –those who act deliberately to violate the constitutional rights of citizens, in this case an innocent, mentally ill, homeless man.[2]

The government has gratuitously mischaracterized and misstated both the nature of Plaintiff's claims and the applicable law that applies to whether Plaintiff's complaint states claims upon which relief may be granted.  First, *Brady v. Maryland*, 373 U.S. 83 (1963) has always applied to "proceeding[s]" other than trials on the merits. Second, the Fifth Amendment's Due Process Clause requires any deprivation of liberty – whether pretrial or post-trial – to comport with due process of law. The five-and-a-half year suppression of evidence showing that another suspect committed the homicide at issue violated Mr. Montgomery's clearly established right to due process and resulted in a deprivation of liberty. Third, this Court, as have other federal courts, has recognized and held that 42 U.S.C. §§ 12131, Americans With Disabilities Act ("the ADA"), and 29 U.S.C. § 794(a) ("the Rehabilitation Act") authorize a cause of action when law enforcement officers fail to accommodate a suspect's disability during an interrogation. *See Sacchetti v. Gallaudet University*, 181 F. Supp. 3d 107, 129 (D.D.C. 2016); *Seremeth v. Board of County Com'rs Frederick County*, 673 F.3d 333 (7th Cir. 2012) (holding ADA applies to police interrogations). The government has twisted the applicable law, such as arguing Plaintiff must plead he was denied the benefit of a program or was unable to participate in a program. This argument is as facile as it is specious.

---

[2] It should be noted that under long-standing qualified immunity jurisprudence, a police officer "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). The legal significance of this aspect of qualified immunity law means a police officer official could be deemed to have notice that the subject conduct violated a person's constitutional right even if there existed at the time no case with materially similar facts. *Id.* at 739

Defendant Brian Wise knew Mr. Montgomery was experiencing psychosis during Mr. Montgomery's interrogations. Still, Defendant Wise failed to provide a reasonable accommodation and employed a coercive technique, the Reid technique, that can elicit false confessions from mentally ill persons. Moreover, the District of Columbia had actual or constructive notice such that it was foreseeable that MPD officers would deny mentally ill suspects needed accommodations during interrogations. Federal courts have long recognized that even when a mentally ill person may not have literally asked for a reasonable accommodation, a failure to accommodate claim can be stated when the defendant was aware of the person's need for an accommodation. *See e.g Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281(1996). Fifth, while purportedly espousing the applicable standards for stating a plausible claim under Rule 8 and the standards for deciding  a 12(b)(6) motion, the government, however, engages in a bait and switch and invites this court to impose a heightened pleading standard – the very standard that the Supreme Court in *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002) and again in *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007).

The Defendants have waived any purported argument alleging the allegations in Count V are insufficient because the Defendants have not cited one case or advanced one argument related thereto.

<u>FACTS</u>

Brandon Montgomery ("Plaintiff"), on behalf of the Estate of Gary Montgomery ("Mr. Montgomery"), filed this lawsuit alleging civil rights violations. Mr. Montgomery was a 55-year old mentally disabled man who in February of 2012 was arrested and incarcerated for five and a half years for a murder he did not commit and of which he was completely innocent.  After five and a half years of being incarcerated at the District of Columbia Jail and St. Elizabeths Hospital, respectively, a District of Columbia jury found Mr. Montgomery not guilty of the murder of Ms. Deoni JaParker Jones. Dkt. Entry 1 ¶ 1. Within hours of the murder, the Defendants were in possession of evidence that demonstrated Mr. Montgomery was not the person who had murdered Ms. Jones. However, the Defendants failed to

pursue the actual killer of Ms. Jones, and instead unconstitutionally fabricated and otherwise coerced

Mr. Montgomery to make statements (that the MPD and the government would later claim were

inculpatory), and intentionally withheld exculpatory evidence MPD obtained hours after the murder

from Mr. Montgomery's defense lawyers until 48 and 72 hours before the start of his trial on July 31,

2017. Dkt. Entry 1 ¶ 3. This exculpatory evidence was intentionally suppressed and not disclosed to Mr.

Montgomery's defense counsel at the time of his February 23, 2012 Preliminary and Detention

Hearings. Dkt. Entry 1 ¶ 4. The exculpatory statement of an eyewitness to the murder who physically

fought with the killer in an attempt to subdue him and hold him for police was given to Mr.

Montgomery's defense counsel only 72 hours before the start of his July 31, 2017 trial. Dkt. Entry 1 ¶ 5.

During the investigation of this case, neither Defendant Brian Wise nor any other MPD officer—in five

and a half years—ever asked the eyewitness who pursued and briefly subdued the murderer to

participate in an identification procedure. Dkt. Entry 1 ¶ 6. A critical (and exculpatory) five minute piece

of video footage showing the actual killer fleeing from the scene, dressed consistently with what the

eyewitness to the murder told police minutes after the murder, was not provided to Mr. Montgomery's

defense counsel until 48 hours before his trial, depriving them of the opportunity to locate other video

footage of the killer fleeing the murder scene early in the case, otherwise investigate important leads,

and make use of these materials at the preliminary/detention hearing and other crucial stages in the

criminal case. Dkt. Entry 1 ¶ 7. DNA testing was conducted on clothes MPD recovered from the crime

scene—clothes MPD believed were left by the murderer—and Defendants obtained a full male DNA

profile. This full male DNA profile did not match the decedent or Mr. Montgomery and the results

excluded Mr. Montgomery as the murderer. Dkt. Entry 1 ¶ 10. The Defendants, in 2012 and at no time

thereafter made any attempts to compare the DNA profile obtained from the clothing to the DNA profile

of another suspect who two callers/tipsters identified and which suspect Defendant Wise interviewed

five days after the murder, who placed himself on the scene of the murder during that interview. Dkt.

Entry 1 ¶ 11. Defendants also failed to enter the DNA profile from the clothing found at the murder scene into CODIS. The Defendants never looked beyond the "ready-made" suspect, despite compelling evidence that Mr. Montgomery was not the person responsible for Ms. Jones' murder. Dkt. Entry 1 ¶ 12. During Mr. Montgomery's February 4, 2012 and February 10, 2012 interrogations, he exhibited obvious signs of active psychosis. Dkt. Entry 1 ¶ 13. In gross violation of the United States Constitution, Defendant Brian Wise fed Mr. Montgomery non-publicly disclosed details about the murder known only to the killer and the police and then used Mr. Montgomery's fractured thoughts and sentences—the result of over eight hours of interrogation—to paste together what Defendants would declare were incriminating and inculpatory statements. Dkt. Entry 1 ¶ 14. The fact that Mr. Montgomery had a mental illness was plainly apparent to Defendant Brian Wise who conducted the nearly six-hour interrogation of Mr. Montgomery on February 4, 2012.  Dkt. Entry 1 ¶ 16. Mr. Montgomery's psychosis, marked by fractured thoughts and disconnected sentences, prompted Defendant Brian Wise to ask Mr. Montgomery if he had a mental illness. In response to another inquiry by Detective Wise about whether Mr. Montgomery had a mental health issue, Mr. Montgomery told Detective Wise, "if I'm talkin to myself I'll- you know, I'll go to a psychiatrist." Dkt. Entry 1 ¶ 17.

The video footage of Mr. Montgomery's February 10, 2012 interrogation shows him in an even more agitated psychotic state, hearing voices and speaking to those voices. Dkt. Entry 1 ¶ 18. Defendant Brian Wise employed coercive interrogation techniques that were unconstitutional and discriminatory because he knew or should have known Mr. Montgomery had a mental illness and needed an accommodation to ensure Mr. Montgomery understood the questions asked and the purpose of the interrogation and was able to communicate and respond to the questions directed at him during the interrogation.  Dkt. Entry 1 ¶ 19. Defendant Wise intentionally fed Mr. Montgomery facts about the murder in an effort to exploit Mr. Montgomery's mental illness and fabricate a confession. Dkt. Entry 1 ¶ 20. Because Mr. Montgomery was experiencing psychosis during both his February 4, 2012 and

February 10, 2012 interrogations, he exhibited a clear and unequivocal contextual processing deficit, as evidenced by his disorganized, disjointed, and fractured sentences and responses. Dkt. Entry 1 ¶ 22. The Defendants failed to make any modification or accommodation to their interrogation of Mr. Montgomery to ensure he was able to communicate and understand the information given to him and instead set about to fabricate a confession from Mr. Montgomery.  Defendants' grossly unconstitutional conduct resulted in MPD obtaining unreliable and bad information that was the result of unconstitutionally coercive interrogation methods that violated Mr. Montgomery's rights under the Fourth and Fifth Amendments and his rights under Title II of the Americans With Disability Act and Section 504 of the Rehabilitation Act, not to be the subject of discrimination. Dkt. Entry 1 ¶ 23.

## STANDARD OF REVIEW

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007) does not impose a regime of "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." In *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002) the Supreme Court made clear that at the stage of pleading, a plaintiff has no evidentiary burden, only the burden to plead a plausible claim.[3] This Court has explained that  a "complaint is only required to set forth a short and plain statement of the claim, in order to give the defendant fair notice of the claim and the grounds upon which it rests. *Evangelou v. District of Columbia*, 901 F.Supp.2d 159, 163 (D.D.C. 2012). Further, "it is not necessary for the plaintiff to plead all elements of his . . . case in the complaint." *Id.* quoting  *Swierkiewicz,* 534 U.S. at  511–14.  Nor must a plaintiff "plead law or match facts to every element of a legal theory." *Evangelou v. District of Columbia*, 901 F.Supp.2d at 163.

---

[3] The Court in *Twombly* examined its decision in *Swierkiewicz* and rejected the argument that its decision in *Twombly* was inconsistent with its holding in *Swierkiewicz* because the Court of Appeals in *Swierkiewicz* had improperly imposed a heightened pleading standard by requiring the plaintiff to plead facts he would need at the trial stage. In contrast, *Twombly* only requires *"*enough facts to state a claim to relief that is plausible on its face" and not evidentiary facts necessary to state a prima facie case.

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) explained that a claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Under *Twombly and Iqbal*, a plaintiff is only required to plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal* 556 U.S. at 678.

 "In evaluating a motion to dismiss, the Court must 'treat the complaint's factual allegations as true ... and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.Cir.2000) (*quoting Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979)) (internal citation omitted); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C.Cir.2005). The notice-pleading rules are 'not meant to impose a great burden on a plaintiff,' *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), and he must, therefore, be given every favorable inference that may be drawn from the allegations of fact." *Kenley v. D.C.*, 83 F. Supp. 3d 20, 29 (D.D.C. 2015) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 584, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Importantly, federal courts have long recognized that Rule 12(b)(6) dismissals are disfavored to the extent a complaint raises a novel claim. In such instances, the trial court should allow further factual development. "To the extent Plaintiffs' claims do 'not fall within the four corners of our prior case law,' this "does not justify dismissal under Rule 12(b)(6). On the contrary, Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.' *McGary v. City of Portland,* 386 F.3d 1259, 1270 (9th Cir.2004) (quoting *Baker v. Cuomo,* 58 F.3d 814, 818–19 (2d Cir.1995), vacated in part on other grounds, 85 F.3d 919 (2d Cir.1996) (en banc)). *See also* 5B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1357 (3d ed.2015) (noting that courts should 'be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability' is 'novel' and thus should be

'explored'). Indeed, as the law 'firm[s] up' in unsettled areas, 'it may be more feasible to dismiss weaker cases on the pleadings;' otherwise, plaintiffs should be given 'an opportunity to develop evidence before the merits are resolved.'" *Wright v. North Carolina*, 787 F.3d 256, 262 (4th Cir. 2015) (quoting *Metts v. Murphy,* 363 F.3d 8, 11 (1st Cir.2004)).

Under *Twombly and Iqbal*, the Plaintiff's claims are sufficiently pled under Rule 8. The complaint contains factual averments that are not labels, naked assertions or simply conclusions.   Far from "unadorned, the-defendant-unlawfully-harmed-me accusations," the complaint contains averments with the type of factual content that would more than permit this court to draw the reasonable inference that the defendants are liable for the misconduct alleged. Even though neither *Twombly* or *Iqbal* require "detailed factual allegations," the complaint contains the factual heft that would nudge the complaint from being merely possible to probable. The averments are informed by physical evidence, including hours of interrogation tapes, other video surveillance evidence and police documents identifying the likely killer, who is also captured on video.

The video interrogation evidence documents the fabrication claim. The course of events in the criminal case document the suppression of the *Brady* evidence. It should not go unmentioned that Mr. Montgomery is deceased and is unable to provide evidence in support of his claims and the Defendants are in sole possession of any other corroborating police documents such as emails and other documents that would further establish the contours of their unconstitutional misconduct.  The allegations in this complaint are not fanciful or hypothetical. Instead, they reveal a course of conduct by police officers that included fabricated evidence, as shown and revealed in the interrogation tapes, suppression of evidence and rank and odious unlawful discrimination. At a minimum, dismissal is not warranted until there is further factual development. The District has also taken the position that the ADA does not apply to police interrogations. ECF 10 at 12. But this assertion is simply a misstatement of the law and does not support dismissal above and beyond the government's attack on the sufficiency of the allegations.

In all but word the government seeks to impose on the Plaintiff the very type of heightened pleading requirement that was rejected in *Swierkiewicz* and again in *Twombly*. Finally, even when a complaint alleges municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a federal court may not apply a "heightened pleading standard," more stringent than usual pleading requirements of plausibility pleading. *See Odom v. District of Columbia*, 248 F. Supp.3d 260 (D.C. D.C. 2017) (explaining there is no heightened pleading requirement for *Monell* claims and citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) and *Atchinson v. District of Columbia et al.*, 73 F.3d 418, 421 (D.C. Cir. 1996)).

<u>ARGUMENT</u>

I.     **This Court Should Deny Defendants' Motion Regarding Count IV Because Plaintiff Has Properly Pled All Elements of a § 1983 Fifth Amendment Violation**

To properly plead a violation under 42 U.S.C. § 1983, "a plaintiff must prove two elements: (1) that the defendant deprived him of a right secured by the Constitution and laws of the United States and (2) the ... defendant deprived him of this constitutional right under color of ... State [law]." *Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 24 (D.D.C. 2003) *citing Adickes v. Kress & Co.*, 398 U.S. 144, 150 (1970). The Defendants' motion does not challenge whether the Defendants acted under the color of law. *See* ECF 10. Thus, the only issue before this Court is whether Plaintiff has properly plead a constitutional violation. Plaintiff has properly pled a Fifth Amendment violation in Count IV by alleging that Defendants Nasr and Wise suppressed materially exculpatory evidence by, *inter alia*:

- Deliberately concealing evidence during his testimony at the preliminary hearing that there was another male seated at the bus stop with the decedent in the minutes leading up to the murder. ECF 1 ¶ 52-53, 76-77, 150;
- Deliberately concealing a five-minute America's Best Wings video showing the killer fleeing the scene. ECF 1 ¶ 60-6, 86, 150;
- Deliberately failing to show a key eye witness, Jermaine Jackson, the video from the exterior and interior of America's Best Wings, located at 4524 Benning Road, SE, that showed the actual killer, who was wearing clothing that fit the description given to police by Mr. Jackson; ECF 1 ¶ 57-59, 150;

- Concealing the identity of the first tipster that identified Mark Johnson as a suspect ECF 1 ¶ 79-80, 150;
- Defendants Wise and Nasr concealed for 5 years the details of an interview with another suspect, Mark Johnson, a man that had allegedly tried to kill his wife with a kitchen knife ECF 1 ¶ 81-86, 150;
- Defendants Wise and Nasr deliberately withheld Jermaine Jackson's recorded statement that proved Mr. Montgomery did not commit the murder of Ms. Jones MECF 1 ¶ 90, 107, 150;
- Defendants Wise and Nasr, in their official capacity acting deliberately, recklessly or intentionally under color of law failed to disclose the foregoing material exculpatory information to prosecutors ECF 1 ¶ 150.

When the government suppresses evidence favorable to an accused that is material to guilt or to punishment, it violates the defendant's right to due process. *Brady v. Maryland*, 373 U.S. 83 (1963); see also *Cone v. Bell*, 556 U.S. 449, 451, (2009). "Brady suppression occurs when the government fails to turn over even evidence that is known only to police investigators." *Youngblood v. W. Virginia*, 547 U.S. 867, 869–70 (2006) (Internal citations omitted). Such evidence is material[4] 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of **the proceeding** would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (emphasis added).

*Brady* has always applied to "proceeding[s]" other than trials on the merits, *See Id*, and this Court should reject the government's argument that *Brady* only applies to verdicts on the merits. *See* ECF 10 at 8 ("Based on the facts alleged in the Complaint, Plaintiff cannot establish that the prosecution's failure to provide exculpatory evidence earlier would have resulted in a different verdict."). First, the *Brady* case itself was not about a guilty verdict. *See Brady v. Maryland* 373 U.S. 83. The factual predicate of *Brady* was that the exculpatory evidence suppressed by the government was material to the appropriate sentence. *See Id*. Moreover, the plain language of *Strickler* does not limit *Brady* to trial and instead applies more broadly to "proceeding[s]." *Strickler v. Greene*, 527 U.S. 263.

---

[4] While notice pleading is the only requirement at this juncture, it is important to note that a "showing of materiality does not require demonstration by a preponderance…" *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006). The materiality standard is, thus, particularly low and this Court should find that Plaintiff has set forth sufficient allegations to meet this low threshold.

Furthermore, it has been clearly established[5] in the District of Columbia that *Brady* evidence must be disclosed "pretrial." *See Perez v. United States*, 968 A.2d 39, 66 (D.C. 2009) (Brady's mandate "necessarily implies timely, pretrial disclosure."). In fact, District of Columbia law requires that *Brady* disclosures be made "well before the scheduled trial date." *Zanders v. United States*, 999 A.2d 149, 164 (D.C. 2010).

Since 1997 in the District of Columbia, a criminal defendant has had the right to present evidence at a detention hearing challenging "[t]he weight of the evidence against the person." *Tyler v. United States*, 705 A.2d 270, 275 (D.C. 1997). District of Columbia law is consistent with the long-standing principle that "in our society, liberty is the norm and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Therefore, a court's authority to detain a person before trial must be "carefully limited." *Id.* Consistent with this mandate, the District of Columbia has a detailed statute which grants the trial court a limited and carefully circumscribed authority to hold a defendant before trial. For more than two decades, based on explicit statutory language in the District of Columbia, judges at detention hearings have been required to consider "[t]he weight of the evidence against the person." D.C. Code Ann. § 23-1322(e)(2). The right to challenge the weight of the evidence necessarily indicates a defendant's right to present exculpatory evidence. If the evidence were not exculpatory, there would be no reason for a defendant to present the evidence at a detention hearing. Moreover, the right to present exculpatory evidence means that a defendant has the right to receive such evidence and to receive it in time to make use of it. Otherwise, a defendant's right to present exculpatory evidence to challenge the weight of the evidence at the detention hearing would

---

[5] This Court should address the constitutional question prior to analyzing whether the right was clearly established. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."). See also *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C.Cir.2006) (noting that whether the defendant officers have violated a constitutional right of the plaintiff is a "threshold question" in the qualified immunity analysis). *Pitt v. District of Columbia*, 491 F.3d 494, 511 n.3 (D.C. Cir. 2007).

be little more than " a promise to the ear broken to the hope, a teasing illusion like a munificent bequest in a pauper's will." *Edwards v. California*, 314 U.S. 160, 196 (1941) (J. Jackson concurring).

This Court should reject any argument that pretrial detention, and in this case, detention for five years, is not prejudicial. Any restriction of liberty, whether pretrial or post-trial, must comport with due process. This is because liberty is a fundamental right. *See United States v. Salerno*, 481 U.S. at 750. Moreover, District of Columbia law clearly establishes that suppressing favorable evidence is directly related to an individual's right to liberty. "The suppression of exculpatory evidence denies the defendant liberty without due process of law." *Miller v. United States*, 14 A.3d 1094, 1107 (D.C. 2011). Indeed, the restriction on a person's liberty has always been a chief concern of the Fifth Amendment as evidenced by its prohibition against depriving a person of "liberty" without due process. U.S. Const. amend. V.  Suppression of material exculpatory evidence is violative of due process. It necessarily follows that restraining a person's liberty impinges on a fundamental right and is inherently prejudicial. Pretrial detention is clearly prejudicial and must comport with due process. In this case, the Complaint alleges that Mr. Montgomery's pretrial detention did not comport with due process because Defendant's Nasr and Wise suppressed material evidence. Thus, Plaintiff has properly pled a Fifth Amendment violation and this Court should decline to dismiss Count IV.

II.     **The Defendants Have Waived Any Argument As It Relates To Count V And The Plaintiff Has Set Forth A Sufficient Claim Under § 1983 For Malicious Prosecution**

This Court should deny the Defendants' Motion as it relates to Count V given that they did not cite one case analyzing a § 1983 malicious prosecution claim nor did they make one argument alleging Plaintiff's Complaint fails to set forth a plausible claim. "It is well established in this circuit that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.' *Johnson v. Panetta*, 953 F.Supp.2d 244, 250 (D.D.C. 2013) (citing *Krupa v. Naleway*, No. 06-1309, 2010 WL 145784, *8 (N.D. Ill., Jan. 12, 2010); see *Raines v. DOJ*, 424 F.Supp.2d 60, 66

n.3 (D.D.C. 2006) (noting that it is not the obligation of the court to research and construct legal arguments open to parties, especially when they are represented by counsel). 'It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.' *Sherrod v. McHugh*, 2018 WL 4608228, at 28 (D.D.C. Sept. 25, 2018). In this case, the words, "malicious prosecution" do not appear in Defendants' Motion. The elements of malicious prosecution are not set forth. No case analyzing malicious prosecution is cited. No sentence in the Motion sets forth an argument that Plaintiff's Complaint fails to properly allege malicious prosecution. Thus, this Court should deem waived the Defendants' Motion as it relates to Count V because it is perfunctory, undeveloped and unsupported by any authority.

Even if this Court chooses to address the merits of Defendants' Motion regarding Count V, "malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably seized without probable cause, in violation of the Fourth Amendment." *Pitt v. District of Columbia*, 491 F.3d 494, 511 (D.C. Cir. 2007). In this case, Plaintiff has sufficiently alleged malicious prosecution by claiming, *inter alia*, "Defendants Wise and Nasr, maliciously arrested, imprisoned and prosecuted Mr. Montgomery without probable cause, knowing there was no evidence connecting Mr. Montgomery with the crime and that they had fabricated statements including admissions attributable to Mr. Montgomery, concerning details about the crime of which Mr. Montgomery was innocent. Defendants Brian Wise and Hosam Nasr in their official capacity acting deliberately, recklessly or intentionally under color of law commenced and/or caused to be continued a criminal prosecution against Mr. Montgomery that was lacking in probable cause, instituted with malice, by disregarding credible evidence demonstrating Mr. Montgomery was innocent, suppressing exculpatory evidence, fabricating and coercing a false confession, failing to adequately investigate the crime and purposely disregarding evidence indicating someone else/Mark Johnson was the perpetrator." ECF 1 ¶ 154-5. The complaint avers what the interrogation video and other video

evidence actually depicts regarding fabrication and evidence of the actual killer, all of which averments inform the basis for Plaintiff's 1983 malicious prosecution claim.  The numerous facts averred are neither formulaic or merely conclusory but instead detail a claim that permits this court to conclude a plausible claim has been stated. Thus, this Court should deny Defendant's Motion because the Complaint sufficiently alleges facts to support a claim for malicious prosecution under § 1983.

**III.    This Court Must Decline To Impose A Heightened Pleading Standard For *Monell* Claims And The Complaint Sufficiently Alleges The District's Failure to Train And Supervise MPD Officers That Interrogate Suspects**

Local governments may be sued under § 1983 for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the municipality's official decision-making channels. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978) ("when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The Supreme Court has rejected the notion that a Plaintiff must plead more than one prior incident to establish a *Monell* violation. Indeed, in …the municipality advanced the argument that "[t]o establish municipal liability under § 1983…a plaintiff must do more than plead a single instance of misconduct." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. at 167. The Court rejected this argument and found that a trial court may not require a heightened pleading standard in cases alleging municipality liability under § 1983. There is no predicate number of previous violations a Plaintiff must plead to give a defendant notice, under Fed. R. Civ. Pro. 8(a), of a *Monell* violation. "[I]f a complaint alleging municipal liability under § 1983 may be read in a way that can support a claim for relief, thereby giving the defendant fair notice of the claim, that is sufficient." *Baker v. District of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003).

In properly pleading a *Monell* violation, a Plaintiff need only set forth allegations showing an "affirmative link, such that a municipal policy was the moving force behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d at 1306 (Internal citations omitted). "There are a number of ways in which a policy can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations. *Id*. Specifically, a failure to train is sufficient to impose *Monell* liability when there is an obvious need. Police officers routinely come into contact with persons with mental illness. The *sin qua non* of an interrogation is to obtain information and if a police officer is untrained in dealing with a person with a mental illness which prevents that person from processing information, that evidences a deliberate indifference to the rights of suspects with mental illness. The results of that indifference cost Mr. Montgomery half a decade of his life.  In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, (1989), the Supreme Court explained "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." That is precisely the circumstances in this case. The need for training on how to interact and, when necessary accommodate a person with a mental illness, is something so obvious that reason would conclude the District has shown deliberate indifference.  Here there was a parade of misconduct by Defendants in carrying out their duties that supports an inference of the failure to train. See e.g *Parker v. District of Columbia*, 850 F.2d 708 ( D.C.C. 1988). This case involves, fabrication, suppression and unlawful discrimination in violation of Mr. Montgomery's due process rights.

Defendant Wise believed Mr. Montgomery suffered from a mental illness yet pursued his efforts to use fabricated evidence to implicate Mr. Montgomery and completely ignored his obvious need for an accommodation during interrogation.

In this connection this, Court should reject the District's reliance on *Egudu v. District of Columbia*, 72 F.Supp.3d 34, 44 (D.D.C. 2014), *Moore v. District of Columbia*, 79 F. Supp. 3d 121, 140 (D.D.C. 2015) and *Singletary v. District of Columbia*, 766 F.3d 66 (D.C. Cir. 2014) at this juncture because these three cases were in a different procedural posture. Each of those cases relied upon by the government in support of its 12(b)(6) motion were summary judgment cases where the question before the Court was whether genuine issue of material fact existed, not whether a plausible claim has been stated. Notably, there was no discussion in these case as to the sufficiency of the pleadings. By asking the Court to analyze the facts of these cases, the District seeks to impose a summary judgment standard without the Plaintiff having had an opportunity to develop the record through discovery. This approach has been rejected by the Supreme Court and the District of Columbia Circuit. *Odom v. District of Columbia*, 248 F. Supp.3d 260 (D.D.C. 2017)

The Complaint sufficiently sets forth a plausible *Monell* claim based on the District's failure to train and supervise detectives that interrogate suspects. The Complaint specifically identifies the interrogation technique used by MPD detectives as the Reid technique. See ECF 1 ¶ 109, 111, 135, 167. Further, the Complaint indicates that employing the Reid technique on mentally ill suspects can lead to false confessions. ECF 1 ¶ 112. The Complaint further places the District on notice that it seeks to enjoin the MPD detectives from employing the Reid technique on mentally ill suspects. See ECF at 38. Further, the Complaint sets forth a previous incident where the Reid technique was used by MPD detective leading to a false confession and an unlawful confinement. ECF 1 ¶ 167. Additionally, the Complaint alleges that the District failed to train and supervise detectives that employed this technique thereby violating the rights of mentally ill suspects. ECF 1 ¶ 165-170. Most importantly, the Complaint alleges

that the District's failure to train and supervise MPD officers led to the use of the Reid technique and Mr. Montgomery's false confession – and Mr. Montgomery's 5.5 years of incarceration. ECF 1 ¶ 170. Accordingly, this Court should decline to dismiss Count VII because Plaintiff has set forth a plausible *Monell* claim against the District.

### IV. Law Enforcement Interrogations Are Subject To The ADA And the Rehabilitation Act And Plaintiff Has Properly Pled Both Causes Of Action

The District has misstated the law on the application of the ADA to police actions and specifically police interrogations. This Court has previously recognized that the Americans With Disabilities Act (ADA) allows for a cause of action against law enforcement officers that fail to accommodate a suspect's disability during an interrogation. *See Sacchetti v. Gallaudet University*, 181 F. Supp. 3d 107, 129 (D.D.C. 2016) ("In light of the case authority cited by the plaintiffs, the Court is persuaded that when viewed in a light most favorable to the plaintiffs, the Complaint states a plausible claim under Title II of the ADA against the MPD for failure to accommodate [a suspect's] disabilities."). *Sacchetti* squarely addressed whether an MPD officers' interrogation of a suspect is subject to the ADA. *See Id*. In finding that the ADA was applicable, *Sacchetti* relied on an abundance of authority from various jurisdictions reaching the same conclusion. Indeed, *Sacchetti* recognized "liability exists even though the 'police properly investigated and arrested a person with a disability for a crime unrelated to that disability, [because] they failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.' *Gohier*, 186 F.3d at 1220–21 (citing *Gorman v. Bartch*, 152 F.3d 907, 912–13 (8th Cir.1998), which recognized such a claim); see also J.*H. ex rel J.P. v. Bernalillo Cnty*., 806 F.3d 1255, 1261 (10th Cir.2015) (assuming, without deciding, that "accommodations may be necessary when disabled individuals are arrested," and stating that "[i]f a police officer incurs a duty to reasonably accommodate a person's disability during an arrest, this duty would have a risen only if [the officer] had known that [the arrestee] needed an accommodation."); *Tucker v. Tennessee*, 539 F.3d 526, 537 (6th Cir.2008) ("As

an initial matter, we find that the ADA applies to ... post-arrest detention ...."), abrogated on other

grounds by *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir.2015); *Waller*, 556 F.3d at 175

(assuming that a duty of reasonable accommodation exists under the ADA but concluding that the

requested accommodations were not reasonable under the circumstances present in that case); *Bircoll v.*

*Miami–Dade Cnty.*, 480 F.3d 1072, 1085–88 (11th Cir.2007) (holding that Title II of the ADA applied

to police officers' conduct during and after the arrest of a deaf motorist, but nevertheless concluding that

summary judgment was properly granted in favor of the county because the requested accommodations

were not reasonable). *Sacchetti v. Gallaudet University*, 181 F. Supp. 3d at 128–29.

    In finding that the Complaint set forth a plausible failure to accommodate claim, *Sacchetti* relied on

the fact that the Plaintiff alleged officers knew he suffered from a mental illness and was deaf. *Id*. at 129.

In this case, Plaintiff alleged, *inter alia*, "[t]he fact that Mr. Montgomery had a mental illness was

plainly apparent to Defendant Brian Wise who conducted the nearly six-hour interrogation of Mr.

Montgomery on February 4, 2012…[and] he knew or should have known Mr. Montgomery had a mental

illness and needed an accommodation to ensure Mr. Montgomery understood the questions asked and

the purpose of the interrogation and was able to communicate and respond to the questions directed at

him during the interrogation." ECF 1 ¶ 16-19. The allegations in the complaint aver that the video

demonstrates Defendant Wise knew or believed Mr. Montgomery had a mental illness. As noted at the

outset of this memorandum, almost forty years, a reasonable District of Columbia police officer would

have known that it is unconstitutional to interrogate and extract a confession from a mentally ill suspect

because "our system of law enforcement should not operate so as to take advantage of a person in this

fashion." *U.S. v. Jackson*, 404 A.2d 911, 924 (D.C. 1979) *quoting Blackburn v. Alabama*, 361 U.S. 199,

207, (1960). If Defendants were ignorant or defiant of *Jackson*, then they should have known of the

requirements of the ADA. *Sacchetti* also noted that although it was impractical for the Plaintiff to

communicate with law enforcement, it was irrelevant whether he requested an accommodation where

the "disability is obvious and indisputably known to the provider of services [because] no request is necessary." *Id*. at 130. In this case, Plaintiff has alleged that Mr. Montgomery "repeatedly showed signs of psychosis manifested by disorganized and jumbled thoughts and a flight of ideas"; was clearly in a "psychotic state hearing voices and speaking to the voices he heard" and that Defendant Wise specifically asked questions of Mr. Montgomery evidencing his knowledge that Mr. Montgomery was mentally ill. ECF 1 ¶ 16-19; 113-118; 171-186. Accordingly, under *Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015) and *Sacchetti v. Gallaudet University*, 181 F. Supp. 3d 107, the District had a duty to modify its law enforcement technique given Defendant Wise's knowledge of Plaintiff's mental illness. The District attempts to obfuscate the fact that this Court and other courts have held the ADA applies to police interrogation by arguing the complaint does not allege any benefit from the program or his inability to participate. These arguments have been rejected by federal courts that have addressed the application of the ADA to police interrogation. *Seremeth v. Board of County Com'rs Frederick County*,  673 F.3d 333 (7th Cir. 2012) (explaining "since *Penn. Dep't of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) and of our sister circuits have determined that § 12132's words 'or be subjected to discrimination by that entity' are meant to be a 'catch-all phrase that prohibits all discrimination by a public entity, regardless of the context,' thereby avoiding the difficult semantics of categorizing each governmental action as 'services, programs, or activities' in the first part of the disjunctive")  The immediate and direct consequence of the Defendants' unlawful discriminatory actions in not providing Mr. Montgomery a reasonable accommodation was that he was falsely implicated, charged, and incarcerated for 5 and a half years.

Accordingly, given that claims and defenses are virtually identical under the ADA and the Rehabilitation Act, this Court should deny the District's Motion as it relates to Counts VIII and IX

(ADA and Rehabilitation Act, respectively) because Plaintiff has set forth a plausible claim for failure to provide reasonable accommodations.[6]

CONCLUSION

This suit is about the constitutional deprivations suffered by a mentally ill homeless man that cost him five years of his life and the trauma of being prosecuted for a crime he did not commit. The District seeks to shield what, by any normative measure of constitutional standards, is odious and should not be tolerated in a nation committed to the rule of law and equal justice. As noted at the outset of this Opposition, Mr. Montgomery, was an easy target because he was homeless and mentally ill. However, he was innocent.  Rather than accord Mr. Montgomery an accommodation so the police could actually determine the identity of the actual killer, the Defendants engaged in a course of conduct, evidenced by video footage, that included fabricating evidence against a mentally ill man unable to understand and communicate. The defendants knew he was mentally ill and they suppressed evidence of his innocence. This conduct is not conduct that should be offered protection by the doctrine of qualified immunity. The District was deliberately indifferent to the need to train its officers on how to carry out their interrogation duties when the suspect is mentally ill. This case puts to the test the venerable principle announced by Chief Justice John Marshall in *Marbury v. Madison* there is no legal wrong without a legal remedy. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137(1803).   Mr. Montgomery has met his pleading obligations and the doctrine of qualified immunity is not a refuge for police officers who

---

[6] This Court should reject the District's argument that "the allegations in the Complaint are limited to the specific acts of the detectives." ECF 10 at 16. First, the District's argument conflates a "failure to train" ADA claim with a "failure to provide reasonable accommodations" ADA claim. Under a failure to provide reasonable accommodations claim, there is no requirement that Plaintiff plead any conduct on the part of the District outside of the law enforcement officer's omission. This claim requires, instead, that a suspect's disability be obvious to the law enforcement officer conducting the interrogation. *Sacchetti v. Gallaudet University*, 181 F. Supp. 3d 107; see also *Pierce v. District of Columbia*, 128 F. Supp. 3d 250. Thus, Plaintiff has no duty to make allegations outside of Defendant Wise's actions on behalf of the District. However, even if this Court finds Plaintiff has a duty to plead specific conduct on the part of the District, Plaintiff explicitly averred the District, since 1994, "had actual or constructive notice of such failures to train… such that it was foreseeable that detectives and other officers would…deny mentally ill suspects needed accommodations and thereby would deprive them of due process and their federal right to be free of unlawful discrimination based on handicap or disability." ECF 1 ¶ 167. Thus, even if this Court declines to follow *Sacchetti* and *Pierce*, Plaintiff's Complaint alleges conduct on the part of the District that evidences the District's failure to properly train its officers on interrogating mentally ill suspects.

deliberately violate the constitutional rights of a citizen, even if he is impoverished, homeless, and mentally ill.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to deny the District's Motion For Partial Dismissal of the Complaint. Alternatively, Plaintiff requests leave to file an amended complaint.

Respectfully submitted,

_____/s/_____

Jason G. Downs
D.C. Bar No. 979476
Downs Collins, P.A.
20 S. Charles Street, Suite 901
Baltimore, Maryland 21201
T:  410-462-4529
F:  410-995-7200
Jason@DownsCollins.com
*Counsel for Plaintiffs*

Dated:  November 21, 2018