UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRANDON MONTGOMERY, as personal representative of the estate of Gary Montgomery,**<br><br>Plaintiff,<br><br>v.<br><br>**THE DISTRICT OF COLUMBIA, ET AL.**<br><br>Defendants. | CA: 18-cv-1928 (JDB) |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff brings this civil action on behalf of Gary Montgomery ("Montgomery"), who was accused – by eyewitnesses and based on video surveillance footage – of stabbing a transgender woman in the head with a knife and killing her. Plaintiff was arrested and prosecuted for the murder, but, ultimately, found not guilty on August 16, 2017. Plaintiff claims that Montgomery's arrest and prosecution was based not upon the video surveillance footage or eye witness testimony but arose from a civil conspiracy between Defendants and the prosecutor based upon their desire to discriminate against Montgomery because of his disabilities. Plaintiff brings various claims related to his arrest and subsequent prosecution. The District is moving the Court for an order dismissing Counts 4, 7, 8, and 9 of the Complaint. Def.'s Mot. to Dismiss [10].

Plaintiff opposes the District's motion to dismiss.

Plaintiff argues that Count 4 should survive a motion to dismiss because he believes that (1) he had the right to receive exculpatory evidence under *Brady* at or before the time of his pretrial detention hearing and (2) if he had the exculpatory evidence produced under *Brady*, then he would have not been held for five years at Saint Elizabeth's, a mental hospital. Pl.'s Opp'n at

9-12. The Court should dismiss Count 4 because no caselaw cited by Plaintiff actually applies *Brady* to a pretrial detainment hearing, caselaw cited by the District tends to support the conclusion that there is no right to the presentation of exculpatory evidence at the early stages of criminal prosecution, and, even if such a right exists, it was not clearly established at the time.

Plaintiff argues Count 5 should not be dismissed because the District did advance any argument supporting its dismissal. Pl.'s Opp'n at 12-15. The District does not ask the Court to dismiss Count 5 under Rule 12(b)(6) at this time.

Plaintiff opposes dismissal of Count 7, on the grounds that his Section 1983 claim against the District need not be supported by allegations of a pattern of prior similar conduct.

Plaintiff argues Counts 8 and 9 should not be dismissed because, regardless of the actual language of the ADA, it should apply here, Pl.'s Opp'n at 17-19, and because

## ARGUMENT

### I. The Court Should Dismiss Count 4.

The Court should dismiss Count 4 because Plaintiff cannot establish a *Brady* violation and he cannot establish that *Brady* has any application to a pretrial detainment proceeding.

Plaintiff asserts Montgomery was "prejudiced" – the third element of a *Brady* violation – by being detained pretrial. Pl.'s Opp'n at 9-10. However, as quoted in the District's brief, to demonstrate prejudice, a party must show "that 'there is a reasonable probability' that the result of the *trial* would have been different if the suppressed documents had been disclosed to the defense." *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (emphasis added). In his opposition, Plaintiff simply gets the law wrong. Plaintiff quotes *Strickler* for the proposition that evidence is *material* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Pl.'s Opp'n at 10 (citing *Strickler*, 527

2

U.S. at 280. Materiality is a threshold question under *Brady*. *Strickler*, 527 U.S. at 280. The issue raised by the Defendants' motion to dismiss, however, is that Plaintiff cannot demonstrate prejudice – not whether the materials at issue would even qualify as *Brady* materials. Consequently, the particular quote from *Strickler* upon which Plaintiff relies is inapposite because it focuses on a different issue.

> Indeed, when the Court in *Strickler* stated the standard, it provided the following:
>
>> The differing judgments of the District Court and the Court of Appeals attest to the difficulty of resolving the issue of prejudice. Unlike the Fourth Circuit, we do not believe that "the Stolzfus [sic] materials would have provided little or no help to Strickler in either the guilt or sentencing phases of the trial." App. 425. Without a doubt, Stoltzfus' testimony was prejudicial in the sense that it made petitioner's conviction more likely than if she had not testified, and discrediting her testimony might have changed the outcome of the trial.
>>   That, however, is not the standard that petitioner must satisfy in order to obtain relief. He must convince us that "there is a reasonable probability" that the result of the trial would have been different if the suppressed documents had been disclosed to the defense. As we stressed in Kyles: "[T]he adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence *290 he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S., at 434, 115 S.Ct. 1555.

*Strickler*, 527 U.S. 290-291 (insertions in original). Moreover, case law supports the interpretation of proceedings with respect to *Brady* as referring to either trial, sentencing, or habeas proceedings. *See Strickler*, 527 U.S. at 291 (referencing evidence related to the sentencing phase of the defendants' trial); *Banks v. Dretke*, 540 U.S. 668, 691 (applying *Brady* to a death penalty sentence). Thus, *Brady* does not apply to a regulatory pretrial detainment hearing or at least, it was not clearly established at that the time.

Furthermore, Plaintiff's attempt to bootstrap *Brady* to a Plaintiff's rights under *Tyler*

3

lacks merit.  *See* Pl.'s Opp'n at 11-12 (citing *Tyler v. United States*, 705 A.2d 270, 275 (D.C. 1997).  *Tyler* held that a pretrial detainee has a right under D.C. Code § 23-1322(e)(1) to produce evidence at a pretrial detainment proceeding.  *Tyler*, 705 A.2d at 272.  *Tyler* is also clear that pretrial detainment proceedings are "regulatory" and pretrial detention does not establish guilt.  *Id.* at 274-275.  Consequently, one cannot reasonably conclude that *Brady*, itself limited to guilt and sentencing phases of a trial, has any application to the regulatory vehicle that is pretrial detention.

Finally, Plaintiff makes no mention of *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 38-40 (D.D.C. 2015) and the question of whether it was clearly established that *Brady* applied to pretrial detention facilities.

Therefore, the Court should dismiss Count 4.

## II.     Plaintiff's Section 1983 Municipal Liability Claim should be Dismissed.

In opposing the motion to dismiss his Section 1983 municipal liability claim against the District based upon a failure to supervise and train, Plaintiff conflates two theories of constitutional theories of liability. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick* v. *Thompson*, 563 U.S. 51, 62 (2011).  Nevertheless, there may be rare circumstances in which "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 6.  In either scenario, a plaintiff also bears the burden of proving that the lack of training actually caused the violation in question. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[F]or liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.").

As to the first theory of failure to train, Plaintiff ignores the dictates of *Connick* and instead relies upon *Leatherman v. Tarrant County*, 507 U.S. 163, 167 (1993) for the proposition that he is not required to allege more than a single instance of misconduct and that there is "no predicate number of previous violations" that must be pled in a complaint. *Leatherman,* which predates *Iqbal*, merely held that there was no "heightened pleading standard" in Section 1983 cases. *Id.* at 167-68. Here, in contrast, the District is not rebuking Plaintiff for his failure to meet a heightened pleading standard, rather Plaintiff has failed to meet the plausible entitlement to relief standard of *Iqbal*. By relying upon one instance of alleged misconduct occurring many years in the past, he has not plead the necessary pervasive pattern of similar constitutional violations a pattern that would plausibly entitle him to relief. See *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986).

Plaintiff relies upon *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), to support his argument that the need for training as to the needs of mentally ill arrestees is so patently obvious that he need not plead a pattern of prior incidents placing the District on notice for a need to act. In *Canton,* the Supreme Court hypothesized a situation where city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. *Id*. at 390, n.10. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. *Id.*

It may well be "patently obvious" that arming officers with guns without training them in their use is likely to result in unjustified shootings. The District submits, however, that it is not "patently obvious" without prior notice of constitutional violations that police officers in the

5

District of Columbia required training to prohibit their use of the "Reid technique" when dealing with the mentally ill arrestees. Consequently, Plaintiff's Section 1983 claim against the District should be dismissed.

### III. The Court Should Dismiss Counts 8 And 9 Because The Complaint Does Not State A Claim Upon Which Relief Can Be Granted Based On Any Unlawful Discrimination.

The Court should dismiss Counts 8 and 9.  In response to Defendant's arguments regarding Count 8 and 9, Plaintiff only relies on *Sacchetti v. Gallaudet University, et al.,* 181 F. Supp. 3d 107 (D.D.C. 2016).  *Sacchetti* is, of course, not binding on this Court and fails to interact in any meaningful manner with the text of the ADA or the Rehabilitation Act.  *See Sacchetti*, 181 F. Supp. 3d at 128-130.  Moreover, *Sacchetti* offers no persuasive analysis; it merely cites some of the cases from Circuits that rule in Plaintiff's favor and ignores the cases on the other side of the Circuit split more fully recognized and described in *Haberle v. Troxell*, 885 F.3d 170, 180 (3rd Cir. 2018).  *See Sacchetti*, 181 F. Supp. 3d at 129 ("In light of the case authority cited by plaintiffs . . .").  *Sacchetti's* strongest point is that in *Pennsylvania Dep't of Corrections v. Yeskey*, the Court extended Title II of the ADA to prison inmates.  *Id.* But, the Supreme Court has not yet ruled on the different question of whether Title II of the ADA applies in this context.  *See, e.g., City and County of San Francisco, Calif. v. Sheehan*, 135 S.Ct. 1765, 1773-1774 (2015) (dismissing the question of whether Title II of the ADA applies in the police context as improvidently granted).

The better analysis, however, always begins with the text of a statute.  *See, e.g., Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation marks and citation omitted).  And, as argued more fully in the Defendants' motion to dismiss, the text of Title II of the ADA does not contemplate

6

the provision of accommodations to a suspect in a police investigation.

Therefore, the Court should dismiss Counts 8 and 9 of the Complaint.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint in part.

                                        Respectfully submitted,

                                        KARL A. RACINE
                                        Attorney General for the District of Columbia

                                        GEORGE C. VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division

                                        */s/ Michael K. Addo*
                                        MICHAEL K. ADDO [1008971]
                                        Chief, Civil Litigation Division Section II

                                        */s/ Aaron J. Finkhousen*
                                        AARON J. FINKHOUSEN [1010044]
                                        Assistant Attorney General
                                        Suite 630 South
                                        441 Fourth Street, NW
                                        Washington, DC 20001
                                        (202) 724-7334
                                        (202) 730-0493 (fax)
                                        aaron.finkhousen@dc.gov